UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-677

| | |
|---|---|
| **CLARISA N. HUBBARD,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on plaintiff's (#11) and defendant's (#13) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each motion and reviewed the pleadings, the court enters the following findings and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff filed an application for disability insurance benefits on March 18, 2014, alleging disability beginning October 11, 2012 (Tr. 241). The claim was denied initially and upon reconsideration. (Tr. 178, 182). Plaintiff requested an administrative hearing, and Administrative Law Judge Susan Poulos ("the ALJ") held a hearing on September 13, 2016. (Tr. 56). On December 21, 2016, the ALJ denied plaintiff's claim after finding she was not disabled within the meaning of the Act. (Tr. 20-38). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1). Plaintiff filed the instant action, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

-1-

## II. Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra.

Even if the undersigned found that a preponderance of the evidence weighed against the Commissioner's decision, said decision must be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

**IV.    Substantial Evidence**

   **A.  Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the court finds that the ALJ's decision was supported by substantial evidence, and it will thus be affirmed.

   **B.  Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

   a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b.   An individual who does not have a "severe impairment" will not be found to be disabled;

   c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity ("SGA") from the alleged onset date of October 11, 2012 through her date last insured of December 31, 2013. (Tr. 28). At step two, the ALJ found that plaintiff has the following severe impairments: myasthenia gravis; coronary artery disease with pacemaker; asthma; degenerative disk disease; depression; and anxiety. Id. At step three, the ALJ found that none of plaintiff's medically determinable impairments, singly or in combination with each other, meets the severity of an impairment in the Listing. (Tr. 28-30).

Then, before step four, the ALJ found that plaintiff had the RFC to perform light work, with the following limitations: only occasional use of ladders, ropes, or scaffolds; frequent use of ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; occasional exposure to extreme heat; and occasional exposure to pulmonary irritants (such as dust, fumes, odors, and

gases) and workplace hazards such as heights and dangerous machinery. Plaintiff is also limited to simple directions, short and simple tasks, occasional interaction with the general public and coworkers, few (if any) workplace changes, and no fast-paced production work. (Tr. 30-36).

At step four, the ALJ found that plaintiff is unable to perform any past relevant work due to her RFC. (Tr. 36). At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including hand packager, electronics worker, and shipping/receiving weigher. (Tr. 37). As a result, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. (Tr. 38).

**D. Discussion**

The court has closely read plaintiff's memorandum (#12) in support of her Motion for Summary Judgment (#11). Plaintiff argues that the ALJ failed to account for plaintiff's problems with concentration, persistence, and pace, that the ALJ did not address apparent conflicts between the Dictionary of Occupational Titles ("DOT") and the testimony of the vocational expert ("VE"), that the ALJ failed to properly assess the severity of plaintiff's symptoms, and that the ALJ failed to properly explain her RFC findings. The court will consider each allegation in turn.

*1. The ALJ's analysis of plaintiff's concentration, persistence, and pace*

First, the court considers plaintiff's allegation that the ALJ did not properly address plaintiff's limitations in concentration, persistence, and pace. Plaintiff argues that the ALJ neglected to include limitations on plaintiff's concentration and persistence, that the ALJ did not properly consider a limitation on pace, that the ALJ's treatment of pace is further insufficient due to vagueness, and that the ALJ did not properly address limitations in social functioning.

Here, the court does not find any issue with the ALJ's analysis. Plaintiff largely relies on

Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), to support her argument. There, the Fourth Circuit held than an ALJ must explain how moderate limitations in concentration, persistence, and pace translate into relevant mental RFC limitations, and that a conclusory limitation to "simple routine tasks" or "unskilled work," absent further explanation, is insufficient. Mascio, 780 F.3d at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). However, the ALJ did not simply limit plaintiff to simple routine tasks or unskilled work. Instead, the ALJ limited plaintiff to simple directions, short and simple tasks, occasional interaction with the general public and coworkers, few if any workplace changes, and no fast-paced production work. (Tr. 31). In doing so, the ALJ has provided an analysis of plaintiff's RFC that is acceptable under the standards set out by the Fourth Circuit. See Sizemore v. Colvin, 878 F.3d 72 (4th Cir. 2017) (remand not warranted under Mascio where substantial evidence supported RFC for "simple one, two step tasks" as long as claimant "working in low stress non-production jobs with no public contact"); see also Jarek v. Colvin, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015), memorandum and recommendation adopted, 2016 WL 626566 (W.D.N.C. Feb. 16, 2016), aff'd, 2017 WL 129024 (4th Cir. 2017) (unpublished) (moderate limitation in pace adequately addressed by "limitation to simple, routine, repetitive tasks not at an assembly line pace"); Michaels v. Colvin, 2016 WL 8710975 (W.D.N.C. Mar. 25, 2016), memorandum and recommendation adopted, 2016 WL 5478014 (W.D.N.C. Sept. 26, 2016), aff'd, 2017 WL 4176228 (4th Cir. 2017) (unpublished) ("Consistent with Mascio, the ALJ limited the RFC not only to simple routine repetitive tasks but also to 'work in a nonproduction pace rates'").

As for plaintiff's contention that the ALJ's RFC statement is vague, the court cannot agree. As outlined above, the RFC described by the ALJ is viable under precedent from this court and

the Fourth Circuit. Plaintiff's only counter is a non-controlling case from another circuit and her own speculation. Neither are sufficient to overturn the precedent cited above.

Plaintiff also argues that the ALJ erred in her analysis of plaintiff's limitations in social functioning, in that the ALJ failed to adopt limitations supported by State agency psychological consultants. However, the court disagrees. The consultants opined that plaintiff was "capable of SRRTs in a low stress and socially limited environment." (Tr. 147, 167). The ALJ's RFC findings are consistent with these opinions as it limited the complexity of tasks, stress of the work, environment, and degree of social interaction. Further, plaintiff appears to argue that the State agency found limitations in the ability to accept instructions and respond to criticism from supervisors when filling in answers on forms, which was not reflected in the RFC by a limitation on interaction with supervisors. However, the Agency consultants made no such reference to that difficulty in their narrative opinion on plaintiff's RFC, and it is the narrative written by the consultant that the ALJ is meant to rely on when assessing plaintiff's RFC. See Program Operations Manual System ("POMS") DI 25020.010.B.1 ("It is the narrative written by the psychiatrist or psychologist . . . that adjudicators are to use as the assessment of RFC"). Thus, the court cannot find the ALJ committed error by relying on the consultants' narrative.

Ultimately, the ALJ's analysis of plaintiff's RFC was thorough and covered a wide array of available evidence, including evaluations, mental status examination results, medications, documented allegations and complaints, and opinion evidence. (Tr. 31-36). As such, the court cannot find that the ALJ committed reversible error on this basis.

## 2. *Apparent conflicts between the DOT and the VE's testimony*

Next, the court considers plaintiff's allegation that the ALJ did not address apparent

conflicts between the DOT and the VE's testimony. Plaintiff argues that all three jobs identified by the VE require reasoning ability that plaintiff lacks, and that two of the jobs require performance from plaintiff that is inconsistent with the ALJ's limitation on production-rate work.

After review, the court cannot find reversible error on this basis. Plaintiff essentially argues that, while the ALJ limited plaintiff to simple, routine, repetitive tasks, the DOT shows that positions suggested by the VE and relied upon by the ALJ are not limited to simple, routine, repetitive tasks, as they require General Educational Development ("GED") Reasoning Levels 2 and 3. GED levels range from Level 1 (lowest reasoning ability) to Level 6 (highest reasoning ability). Whether there is an apparent conflict between simple, routine, repetitive work and GED Level 3 is far from settled. The Fourth Circuit has yet to provide binding precedent on this issue, and in examining persuasive precedent elsewhere, the court has found that a circuit split exists. Compare Zavalin v. Colvin, 778 F.3d 842, 846-47 (9th Cir. 2015) (finding an apparent conflict exists) and Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (same) with Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (finding no apparent conflict exists) and Hillier v. Soc. Sec. Admin., 486 F.3d 359, 367 (8th Cir. 2007) (rejecting a *per se* conflict but noting tension between GED Level 3 and simple, routine, repetitive tasks). Indeed, even this district's case law is split on the matter. Compare Lorch v. Berryhill, 2017 WL 1234203 (W.D.N.C. 2017) (finding an apparent conflict exists) and Adkins v. Berryhill, 2017 WL 1089194 (W.D.N.C. 2017) (same) with Davis v. Berryhill, 2017 WL 4248811 (W.D.N.C. 2017) (finding no apparent conflict) and Martin v. Colvin, 2015 WL 9094738 (W.D.N.C. 2015) (same) and Carringer v. Colvin, 2014 WL 1281122 (W.D.N.C. 2014) (same).

Here, the ALJ relied on VE testimony for the jobs of hand packager and electronics worker

(GED Level 2), as well as shipping and receiving weigher (GED Level 3). Even assuming that shipping and receiving weigher suffered from an apparent conflict as a Level 3 job, the two Level 2 jobs suffice. Broadly speaking, Level 2 jobs require the ability to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT App. C, 1991 WL 688702 (1996). While plaintiff argues that an unpublished Fourth Circuit decision suggests that Level 2 jobs are similarly incompatible, that decision involved a plaintiff limited even further to only one- or two-step instructions, not limitations like plaintiff's. See Henderson v. Colvin, 643 F. App'x. 273, 276-77 (4th Cir. 2016). This and other courts agree that such a ranking does not imply an apparent conflict with plaintiff's RFC as do other circuit courts. Thacker v. Astrue, 2011 WL 7154218 (W.D.N.C. 2011); Weaver v. Colvin, 2013 WL 3989561 (M.D.N.C. 2013); McCullough v. Colvin, 2015 WL 4757278 (D.S.C. 2015); Hackett, 395 F.3d at 1175; Money v. Barnhart, 91 F. App'x. 210, 214 (3d Cir. 2004) (holding that work at Level 2 "would not contradict the mandate that [the] work be simple, routine and repetitive"). The record cited to by the ALJ shows that the jobs of hand packager and electronics worker exist in significant numbers in the national economy, with a combined 379,000 jobs. (Tr. 37). While there is no established minimum number to be satisfied, the Commissioner's burden has been satisfied in other matters on the basis of far fewer jobs. See Cogar v. Colvin, 2014 WL 1713795 (W.D.N.C. 2014) (holding that 35,000 jobs nationally accounted for sufficient numbers). Thus, the Level 2 jobs alone are sufficient to meet the Commissioner's burden.

Plaintiff also argues that the hand packager and electronics worker are invalid on other grounds. Specifically, plaintiff notes that the Department of Labor describes each job as

performing repetitive or short-cycle work, which "[i]nvolves performing a few routine and uninvolved tasks over and over again according to set procedures, sequence, or pace with little opportunity for direction or interruption." Dep't of Labor, The Revised Handbook for Analyzing Jobs 10-2 (1991). Plaintiff contends that this contradicts the ALJ's limitation to no fast-paced production work.

The court disagrees. First, plaintiff's stated source is not binding on this court. Christensen v. Harris Cty., 529 U.S. 576, 587 (2000) (holding that "policy statements, agency manuals, and enforcement guidelines . . . lack the force of law"); see also Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (holding that another manual "has no legal force" and "does not bind the SSA"). Second, plaintiff's source is immaterial; it says nothing about work being fast-paced, but rather that work will be performed according to a set procedure or pace, whether fast or slow. As such, the court cannot find that the ALJ committed reversible error on this basis.

### 3. *The severity of plaintiff's symptoms*

Next, the court considers plaintiff's allegation that the ALJ failed to properly consider the severity of plaintiff's symptoms. Plaintiff argues that the ALJ issued only a boilerplate finding on the severity of plaintiff's symptoms, and that such a finding cannot stand on its own without more.

An ALJ must evaluate plaintiff's statements in light of all available evidence and determine the degree to which those statements reliably indicate the impact of plaintiff's symptoms on her ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1020935 at *2; Craig, 76 F.3d at 595 (evaluation of plaintiff's symptoms "must take into account not only the claimant's statements about [her] pain, but also 'all the available evidence'"). An ALJ will also consider "whether there are any inconsistencies in the evidence and the extent to which there are

any conflicts between [plaintiff's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). see also Rode v. Colvin, 2014 WL 6617261, at *2 (W.D.N.C. Nov. 21, 2014) ("The Fourth Circuit has established that it is within the province of the ALJ to reconcile inconsistencies in the evidence, that the claimant bears the risk of nonpersuasion, and that the ALJ's determinations concerning credibility are to be given great weight.")

Here, the court finds that the ALJ's determination is acceptable under the standards set out above. The ALJ did consider plaintiff's fatigue in her analysis, as well as the medical opinions that dealt with plaintiff's fatigue and the disease associated with it, myasthenia gravis. The ALJ noted physician's assistant Eureka Rigby's assessment of plaintiff's myasthenia gravis and its effects on the plaintiff, but gave it little weight and explained her reasoning for why little weight was appropriate. (Tr. 35). Similarly, Dr. Benjamin Brooks noted plaintiff's myasthenia gravis and associated severe fatigue, but the ALJ gave his opinion little weight and explained her reasoning for why such weight was appropriate. (Tr. 35-36). The ALJ also noted that plaintiff's myasthenia gravis had been in remission for some time, and that no physician limited plaintiff permanently; indeed, the ALJ noted that plaintiff had been capable of working with her condition in the past. (Tr. 35).

Plaintiff makes other arguments that appear to be attributable to unintentional inclusion by plaintiff in drafting her memorandum; for example, while plaintiff contends that the ALJ omitted any discussion of plaintiff's daily activities, the ALJ specifically took plaintiff's daily activities into account, such as how she watched television for a couple hours per day, had a home exercise program of mostly yoga poses to deal with pain, and had assistance with personal hygiene from her family. (Tr. 31-32). As such, the court finds no basis for reversal on this issue.

### 4. *The ALJ's explanation of her RFC findings*

Finally, the court considers plaintiff's allegation that the ALJ failed to properly explain her findings on plaintiff's RFC. Plaintiff argues that the ALJ did not provide a proper narrative discussion of how she arrived at plaintiff's mental RFC limitations, or the postural limitations in her physical RFC. The RFC determination is legal rather than medical and wholly within the province of the ALJ. 20 C.F.R. §§ 404.1527(e) and 404.1546.

An ALJ must assess plaintiff's work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). The RFC assessment must include "a narrative discussion describing how the evidence supports each conclusion" and cite specific facts and nonmedical evidence in doing so. Id. at *4. Remand for lack of discussion is merited only "when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review.'" Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017) (quoting White v. Colvin, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016)).

Plaintiff's argument is essentially that the ALJ failed to properly discuss the mental and physical limitations of her RFC findings. The court cannot agree. The ALJ noted that she added more mental and postural limitations than the previous ALJ to account for elements of plaintiff's testimony and additional medical evidence of record. (Tr. 36). Further, the ALJ spent a number of pages preceding the RFC finding outlining the medical evidence and testimony, which ranged from plaintiff's allegations of fatigue to courses of treatment and examination results. (Tr. 30-36). As the ALJ recited and analyzed such evidence and explained her reasoning along the way – and in doing so provided the Court with a logical bridge connecting the RFC to the evidence considered -- the court cannot find that the ALJ's opinion was so "sorely lacking" that meaningful review

was frustrated. Ponder, 2017 WL 1246350 at *4.

Furthermore, the ALJ repeatedly referenced the opinion of State agency consultants and their explanations, and the court notes that this court "has previously held that an ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." Herren v. Colvin, 2015 WL 5725903 (W.D.N.C. Sept. 30, 2015). Ultimately, plaintiff appears to disagree with the weight afforded certain opinions by the ALJ and the ALJ's analysis of the evidence itself; however, re-weighing the evidence is not the purpose of this court's review. As such, with the ALJ's RFC analysis supported by substantial evidence and the court cannot find a basis for reversal on this issue.

**E. Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the cross Motions for Summary Judgment, and accompanying memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#11) is **DENIED**, the Commissioner's Motion for Summary Judgment (#13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: August 6, 2018

Max O. Cogburn Jr
United States District Judge